# GRAFTON.

## DECEMBER TERM, A. D. 1850.

### BROWN *v.* STEVENS & *al.*

The plaintiff became a party to a contract to clear land for the defendants, and get the lumber to a mill, where the defendants were to manufacture it, and the other parties were to receive one half of the manufactured lumber as their pay. Part of the lumber was taken from the land and put into a boom, but the agent of the defendants having neglected to saw it, it was swept away by a freshet. The parties subsequently made an estimate of the number and quality of clapboards the lumber would make, and the defendant's agent agreed to pay to each of them a certain sum. The plaintiff then brought an action to recover the value of his "interest in the lumber drawn to the mill," and of his "share of the timber." *Held,* that the action could not be maintained, because the plaintiff had no interest in the lumber or share in the timber, but that his claim was only to receive a compensation for his labor.

ASSUMPSIT, upon an account annexed to the writ.

The defendants were Ebenezer Stevens, Henry S. Walker, William Stevens, Joseph Stevens, John Stevens, George Hanaford, Greeley Hanaford, and John Mussey, alleged to be partners under the firm of Stevens, Walker, & Co.

It was admitted that the defendants were partners as alleged, after Jan. 18th, 1843, and that all of them except Mussey, were partners long before that time, under the same name of Stevens, Walker, & Co.

The account consisted of one item, to wit:

1843. — Oct. — To share of timber got in by self and
    Wm. R. Wells, price agreed,                     $14.34
And a second count for goods sold, &c.          20.00
under which was specified,

" My interest in lumber drawn to the mill by self and Wells, in winter of 1842–3, being 1-4 part when manufactured by defendants. The whole of which was sold to defendants in 1843, after part had been manufactured."

Under the general issue the plaintiff put in evidence tending to prove, that in the winter of 1841–2, W. R. Wells, and Jesse Wells, made a bargain with Ebenezer Stevens, who was the general agent of Stevens, Walker, & Co., to clear a lot of land of the company, and get in to their mill all the timber suitable for clapboards; that the timber was to be manufactured by the defendants, and they were to have one half of the timber when manufactured, for their pay; that they logged from the lot that winter; the lumber was manufactured, and they received their share of it; that early the next winter, the Wellses made an agreement with Brown, by the assent of said Stevens, to take half of their job; and they and Brown hauled in the timber in question; part of it, about 2,000 or 3,000 feet was sawed, and the rest was, at the request of Stevens, in June, put in his boom in the pond, to be sawed immediately; that he neglected to saw it, and, in September, a freshet swept the larger part of it away.

Soon after, Brown and Wells went to Stevens, and contended it should not be their loss, as they had done as they agreed, and he had neglected to saw as he agreed, and Stevens did not contend it should be their loss. The parties knew the number and quality of the logs, and made an estimate of the number and quality of clapboards, they would make, and Stevens agreed to pay to each a certain sum, and was to take the logs where he could find them. He had hopes to save many of them in a boom below. He paid Wells at the time, but did not then pay the plaintiff.

Evidence was introduced by the defendant, having some tendency to show, that Mussey, upon becoming a partner, assumed the share of the persons whose interest he purchased, in the debts and liabilities of the firm.

The defendant contended that there was no evidence on which the action could be sustained; that the logs belonged to the old firm of Stevens, Walker, & Co., of which Mussey was not a

member, who were to pay one half of the lumber, when manufactured, for Wells and the plaintiff's labor in drawing; and therefore till his share was delivered to the plaintiffs, he had no property in the timber, and of course could not sell it.

If, however, he had any such property, the whole of the last agreement was not only a sale, but a composition of the plaintiff's claim under the original contract, and the $14.34 was to be paid partly in consideration of that composition, and could not be recovered in this action, on account of a variance between the declaration and the evidence.

That a part of the consideration of the promise to pay the $14.34 being the composition of the claim under the original contract, to which Mussey was not a party, he was not liable to pay, and Ebenezer Stevens, as the general agent of the new firm, could not bind him to pay.

The Court charged the jury, that if they should find that Mussey came in, assuming the old liabilities, he might be holden on a contract made in adjustment of claims against the old firm, to which the defendants excepted.

The jury found a verdict for the plaintiff, which the defendants moved to set aside, by reason of the said objections and exceptions.

*H. A.* and *W. J. Bellows,* for the plaintiff.   Wells and Brown, and Stevens, Walker, & Co., were tenants in common of the timber after it was drawn, and in the fall of 1843, the plaintiff sold his share to the defendants, Mussey then being a member of the firm.   The timber was then, some of it at the mill, and some below in the river, the boom having been broken.

Whether the amount agreed to be paid was more than its value does not appear.   Nor does it appear how far the neglect of the defendants to saw it out affected the price.

It was put in the boom in June, when Mussey was a member of the firm, to be sawed immediately, and on account of the neglect to saw it, the plaintiff claimed that the defendants ought to bear the whole loss, and the defendants agreed to buy the timber, and pay the $14.34.

If the price was affected by the neglect, it was right, being a matter about which the new firm was competent to contract.

Even if the contract to saw immediately had been the contract of the old firm, the agreement bound Mussey, in as much as he assumed the debts of the old firm.

*Livermore,* for the defendants.

GILCHRIST, C. J. This matter is extremely technical. The plaintiff has declared for his share of the timber got in by him and Wells at an agreed price of $14.34. The original contract was, that the Wellses were to clear the company's land and get the timber to the mill, and were to receive one half of the manufactured lumber for their pay. They had no interest in the timber there, but their whole claim was to be paid for their services. Perhaps they had a contingent interest in it, for if the lumber should be lost without any body's fault, perhaps they could not claim any pay for their labor, in money, as they had agreed to receive as their compensation, one half the manufactured lumber. The plaintiff hauled in the timber in question, by virtue of an agreement with the Wellses, to which Stevens assented. Most of the timber was lost by the neglect of Stevens, who agreed to pay a certain sum and take the logs where he could find them.

Now, here was, in truth, no sale of the plaintiff's share of the timber, for the plaintiff had no share or interest in the timber, which he could sell. The plaintiff was to haul the timber and to receive one half of it when manufactured in payment of his labor. Instead of this compensation, he agreed to receive the sum of $14.34, but that sum was merely the price of his labor, and not the purchase-money of his share in the lumber. The contract was not changed by the agreement to receive money, instead of lumber, in compensation.

The declaration therefore is not supported by the evidence. The instruction is correct, that if Mussey assumed the old liabilities, he might be held on a contract made in adjustment of claims against the old firm. Stevens was the general agent of

the old firm, and his authority extended to the adjustment of their liabilities.

*Verdict set aside.*